The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,
Plaintiff,

v.

BRADY BINGHAM HALL,
Defendant.

NO. CR26-5224 TMC

GOVERNMENT'S RESPONSE TO DETENTION APPEAL

## I. INTRODUCTION

Brady Bingham Hall pulled images of minors from the internet and then used an application to morph them into child sexual abuse material (CSAM) by removing their clothing. In doing so, he violated his victims' sense of safety and security, and his conduct will no doubt have ripple effects for his victims for years to come.

It took Hall nothing more than a smartphone and a few minutes to cause profound harm to the small community where he lives. The magistrate judge rightly concluded pretrial supervision could not reasonably assure community safety and ordered him detained. This Court should decline Hall's request to set that detention order aside.

Hall's request for release suffers from at least two fatal defects. First, it depends on his assurances that upon his return to state custody, he will be granted early release within a few months and be placed on electronic home detention. Despite his assurances,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

there is no reason for this Court to assume that outcome is guaranteed. And release in this case will not reasonably assure his future appearance because it will mean he is subject to the authority of another sovereign.[1]

Second, pretrial supervision cannot meaningfully address Hall's dangerousness. His promises of future compliance will come as cold comfort to any future victims, particularly when his actions show that this promised future compliance is far from a certainty. And more important, there is no realistic mechanism to ensure Hall keeps his promises because pretrial services cannot meaningfully supervise Hall's compliance with restrictions on device access and internet use.

Accordingly, the Court should deny Hall's motion and decline to set aside the magistrate judge's detention order.

## II. FACTUAL AND PROCEDURAL HISTORY

As detailed in the complaint, Dkt 1, local police in Skamania County arrested Hall in August 2025. They seized his iPhone and sought a warrant to search that device for evidence of trafficking in controlled substances, including any photographs of such substances.

While reviewing the data from Hall's phone, police uncovered several photos of minors the reviewing detective recognized from the Skamania County community. There appeared to be two versions of the photos: an original and one or more additional photos in which the minors' clothing had been removed.

During a recorded, post-*Miranda* interview, Hall acknowledged pulling these photos from the internet and then using an application to remove the clothing from the girls in the photos. He confirmed that he was sexually aroused by these altered photos

---

[1] In the event the Court determines release is appropriate, the Court should confirm with the defendant that he intends to waive any rights he may have under the anti-shuttling provision in Article IV(e) of the Interstate Agreement on Detainers. *See* 18 U.S.C.A. § APP. 2 § 2 (West).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and acknowledged that several of these photos likely depicted minors—which was obvious from the photos themselves and police were able to confirm through witness interviews.

The State of Washington ultimately charged Hall with several offenses related to the possession of controlled substances, having a concealed firearm, and the CSAM. The firearm/controlled substance case was assigned Skamania County Superior Court Cause No. 25-1-00029-30. And the CSAM possession matter was filed under Skamania County Superior Court Cause No. 25-1-00031-30. At the time of his arrest in August 2025, Hall was also on release in Skamania County District Court Cause No. 25-001006 where he was charged with driving under the influence (DUI).

Regarding Hall's pretrial supervision history, the Skamania County Probation Department reports that Hall was released without supervision in the DUI matter in March 2025, though he was required not to commit any new law violations. Following the filing of the new charges, Hall was placed on pretrial supervision. Hall declined to possess an internet-capable device, so there was no computer monitoring in place during Hall's supervision. In May 2025, Hall had a positive UA for THC, which resulted in his bond being revoked and his bail increased in his two remaining cases. (The State of Washington dismissed the CSAM possession case in April 2025.)

Hall ultimately pled guilty to two counts of possessing controlled substances with intent to distribute and driving under the influence. The controlled-substance offenses resulted in a 20-month custodial term, which Hall is currently serving.

Following the state dismissal of their CSAM case, the United States charged Hall via criminal complaint with possessing CSAM in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt 1. A grand jury sitting in the Western District of Washington returned an indictment charging the same offense.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Upon the conclusion of Hall's remaining Skamania County prosecutions and his transfer to a state correctional institution to serve his sentence, Hall entered federal custody on a writ and was arraigned on September 28, 2026. Dkt 14. A detention hearing took place over two days (October 5 and 6), and the magistrate judge ordered Hall to remain in custody pending trial. Dkt 19.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

Under 18 U.S.C. § 3145(a), this Court reviews a magistrate judge's detention order de novo. *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). The Court owes no deference to the magistrate judge's findings.

The Bail Reform Act requires detention pending trial if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Dangerousness must be demonstrated by clear and convincing evidence, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), while risk of flight may be established by a preponderance of the evidence. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).

The rules of evidence do not apply in detention proceedings. 18 U.S.C. § 3142(f)(2)(B). The government may present evidence by proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

The Bail Reform Act directs courts to consider several factors in making a detention or release decision: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

appearance at court proceedings"; and (4) the nature and seriousness of the danger to any person or the community that the defendant's release would pose. 18 U.S.C. § 3142(g).

## IV. ARGUMENT

### A. The statutory factors weigh against release.

The statutory factors Congress directs courts to consider favor detention in this case.

***The nature and circumstances of the charged offense:*** The seriousness of Hall's offense favors detention. Hall pulled innocent photos of minors he found online and then morphed them into child exploitation material. True, his offense did not involve sexual contact with these minors. But it was no less a violation of their sense of safety and their dignity. The Court need look no further than the statements of Hall's victims to see how his conduct affected them and continues to reverberate in their lives. *See* Exhibit 1 (filed under seal).

The defense goes to great lengths to minimize the harm presented by Hall's offense, seemingly suggesting that what people don't know won't hurt them. To be sure, if there were evidence Hall had distributed the imagery he created, that would be worse. But for his victims, what the evidence shows he did here was assuredly bad enough.

And critically, Hall's crime is not only a crime of violence, *see* 18 U.S.C. § 3156(a)(4), but it is also a crime against a minor—both factors that the Bail Reform Act highlights as important to the detention analysis. *See* 18 U.S.C. § 3142(g). And rightly so, given the threat posed by people who see children as appropriate objects of sexual desire.

The substantial custodial penalties for Hall's crime are also instructive. While his crime does not carry a mandatory term of custody, Congress fixed a maximum punishment of 20 years. The statutory scheme reflects a clear legislative judgment that sexual exploitation of children is a serious crime that requires stiff punishment to achieve deterrence, incapacitation, and just punishment.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In sum, while Hall may see little problem with what he did here, the harm suffered by his victims is hard to imagine. The seriousness of his offense plainly should give this Court pause before ordering his release.

***The weight of the evidence:*** Although the Ninth Circuit treats the weight of the evidence as the least important statutory factor, this Court is nonetheless "require[d]" to consider it. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that defendant would pose a danger if released).

Here, the evidence is straightforward and substantial. *See generally* Dkt 1. Among other things, police arrested Hall in August 2025 when they found him in possession of concealed firearms and controlled substances. During a warranted search of his phone permitting the seizure of photos of controlled substances, among other things, police found the CSAM Hall created. Much of that imagery showed it was created between May and August 2025.[2] And when confronted with what police found, Hall admitted he was responsible for its creation and aware he had likely created nude images of minors. Finally, he confirmed he was sexually aroused by the nude photos he created.

To be sure, a detention hearing is not a trial. The task before the Court is not to determine guilt or innocence but to assess risk. Still, the presumption of innocence to which Hall is entitled does not mean the Court must (or should) turn a blind eye to what the evidence shows he has done. The stakes are too high and the potential victims too vulnerable. "Detaining adults who prey on children for the adult's sexual gratification or for the production of child pornography is . . . a legitimate government objective. One of the fundamental duties of government is public safety, including protecting children from sexual predators." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

---

[2] HSI Special Agent Julie Peay provided the information concerning the creation dates associated with the imagery by email dated October 21, 2026, and undersigned counsel provided a copy of that email to defense counsel.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Hall's history and characteristics:*** Hall's history and characteristics present a mixed picture but still favor detention. He has strong community ties and family support, both positive factors. Neither of these stopped him from committing his offense, however. He also committed both the controlled substance offenses to which he has pled guilty in Skamania County and the instant offense while on release and under an obligation not to commit new law violations. Finally, pretrial supervision in Skamania County ended with his bond being revoked after he tested positive for THC use.

His pitch for release centers on his assurances to the Court that he can be trusted to scrupulously follow any conditions it may set. The problem is that his actions are not in line with his promises.

***The nature and seriousness of the danger posed by Hall's release:*** Hall has revealed to the world what he is capable of. And his victims are understandably alarmed by the idea of his being released into the community. More important, Hall's promise not to commit another offense will come as cold comfort to a future victim whose imagery he morphs.

Plus, given his track record on release, his promises of scrupulous compliance with any conditions this Court may set are far from confidence inspiring. In assessing Hall's risk, the Court should look to what he did when he thought no one was looking, not just his promises offered in hopes of being granted release.

**B. No conditions can adequately mitigate Hall's dangerousness or ensure his future appearance.**

Section 3142(g)(4) requires the Court to decide whether any conditions or combination of conditions could reasonably assure community safety or his future appearance. They cannot.

**1. Device and internet access restrictions cannot reasonably ensure community safety.**

As to community safety, any release conditions that might adequately mitigate Hall's risk suffer from the same "critical flaw": they depend on the defendant's "good



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

faith compliance." *Hir*, 517 F.3d at 1092. There are no tools to reliably monitor his compliance with device and internet restrictions, leaving the Court to depend on Hall to decide when and to what extent he will do as ordered. That situation poses an unacceptably high risk and is what led the magistrate judge to order Hall's detention here.

Computer monitoring and limitations on device or internet access will not meaningfully reduce the risk Hall poses for two reasons. First, Pretrial Services cannot monitor devices it does not know about. Nor can it monitor devices that belong to others to which Hall might gain access (either with or without their consent). Second, the ease with which Hall could evade these restrictions without detection means the only thing standing in the way of his victimizing someone else is his promise not to do so.

Pretrial Services has no general search authority and no real mechanism to verify Hall's compliance with these provisions. To be sure, they can inspect his home, with or without notice. And if Hall were foolhardy enough to have his unauthorized smartphone out in the open, his pretrial officer would likely notice. Even then, the officer would only be permitted to inspect the device in his presence and presumably only if he provided a passcode.

Hall could also avoid all this with the simple expedient of keeping that hidden phone in a drawer, under a pillow, or in a shoe box since Pretrial Services has no authority to search a defendant's residence. Of course, even if it did, the likelihood Hall (or any other motivated defendant) could evade detection with relative ease is high.

Nor does the fact that Hall's mother is willing to serve as a third-party custodian meaningfully change the analysis. That is not to say the government has information suggesting her offer to serve in that capacity is made in anything other than good faith. It is only to say that for digital device crimes in particular, the ease with which a motivated offender can evade detection places the defendant in the primary position to determine



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the degree to which he or she will comply with court-ordered restrictions that are essential to protecting the community.

Indeed, the challenge of monitoring unauthorized devices stands in contrast to the relative ease with which supervising officers can monitor a defendant's location, employment status, or substance use. In those arenas, the Court must trust to be sure, but it has an effective means of verifying. When it comes to monitoring device and internet use, only the trust part is on offer.

Which is really the government's point, since all Hall would need to get back online and wreak havoc is a secret device and a modicum of privacy.

Ultimately, risk has two components: the probability an incident will occur and the harm caused if it does. Even if supervision could reduce the probability that Hall victimizes another to a level considered acceptable (it cannot), the harm Hall could cause is immense.

The Court should take no chances here. There is, simply put, no way to supervise Hall's online activity or conduct in the world unless he cooperates fully and with total transparency. And if he does not, it will be a child that pays the price. The government cannot countenance such a risky bet, and this Court should not either.

**2. Hall's state custodial sentence means any conditions this Court might impose cannot reasonably assure his future appearance.**

The conditions Hall proposes also cannot reasonably ensure his future appearance. True, his strong family and community ties suggest that he poses minimal flight risk. Nor is there evidence suggesting he has a history of failing to make court appearances. The problem here is that release on bond will result in his return to state custody, meaning that a writ will be required to secure his appearance for any future hearings and the U.S. Marshal Service will be required to transport him to and from state custody each time.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Release in this case means placing the defendant in the custody of another sovereign and simply assuming that he will be available as needed. The defense assures the Court that Hall will be granted discretionary release to home confinement within a couple of months after returning to state custody of course. And while the government does not doubt defense counsel's sincerity in that belief, the fact remains that Hall's custodial status and future availability will fall under the purview of the State of Washington, not this Court.

**C. Hall's assertion that release is appropriate is incorrect.**

Hall's release request boils down to his insistence that he be trusted to do as he is directed. And the remainder of his argument focuses on generalized pronouncements about what release or detention means in a given case that do little to assist the Court in answering the key question presented here.

Hall points to the rebuttable presumption of detention that applies in certain cases and seems to suggest that its inapplicability here is a sign that detention is unwarranted. Not so. That there is no rebuttable presumption of detention in this case means Congress concluded only that detention was not to be the presumptive result. Having made Hall's offense eligible for detention, however, Congress quite obviously did not intend to exclude defendants like Hall from pretrial confinement altogether.

Relatedly, Hall suggests that detention here would be tantamount to announcing a rule of mandatory detention for defendants charged with this offense. Again, not so. And indeed, it is Hall who is, in essence, arguing for mandatory release any time a defendant promises to comply with a bond.

The Bail Reform Act does not deal in absolutes. It requires courts to assess each case individually and determine release or detention. To be sure, child exploitation cases involving digital devices like this one will almost always present the challenge of meaningfully supervising a defendant's device and internet use. The question here is



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

whether the Court should have sufficient confidence in the defendant's promised future compliance that it is a safe bet to effectively place him in the driver's seat when it comes to community safety.

Hall emphasizes the many barriers that will make it difficult for him to obtain an unauthorized device, as well as his track record while on release in his state case. To be clear, the lack of apparent violations of his device and internet restrictions in that case could be the product of either not having violated the conditions or not having been caught. After all, it was not until his arrest in August 2025 that there was any reason to think he had committed new crimes while on release in the pending DUI matter.

The question confronting this Court is whether to leave to Hall the lion's share of the responsibility for determining the extent to which there are meaningful limits on his device and internet usage. He insists he is a safe bet, yet he has also shown what he is capable of when no one is looking.

Simply put, the price of misplaced trust in Hall's promises is too high. And there is good reason to think that Hall's promised self-regulation consists of little more than empty words offered in hopes of release. The government cannot countenance taking that chance here and urges the Court to decline Hall's invitation to do so.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

The magistrate judge correctly concluded that release was not appropriate given the danger posed by the defendant and the inadequacy of the conditions the Court might impose. The record does not support release, and the Court should deny Hall's request to set aside the detention order.

DATED this 27th day of October, 2026.

Respectfully submitted,

*s/ Matthew P. Hampton*

MATTHEW P. HAMPTON
Assistant United States Attorney
U.S. Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-6677
Fax: (206) 553-2502
E-mail: matthew.hampton@usdoj.gov

*I certify that this memorandum contains* 3,348 *words, in compliance with the Local Court Rules.*